Next case is 513-0189. He will be Gary Wingate. Mr. O'Neill and Ms. Shanley. May it please the court. Counselor, my name is Lawrence O'Neill from the Office of the State of Health Defender and I represent Gary Wingate in this clause. Wingate was found guilty of first-degree murder and aggravated discharge of a firearm following a jury trial involving the shooting death of Darlene Russell. This is an appeal from the circuit court's dismissal of Wingate's post-conviction petition at the second stage of the proceedings. I ask this court to reverse the trial court and remand for an evidentiary hearing on Wingate's post-conviction claim of actual innocence based upon newly discovered evidence. Briefly, the evidence of the trial show that Wingate shot and killed Russell while Russell was outside their home. Wingate presented a claim of self-defense. The shooting was prompted by a multiplication between Wingate and Russell's husband, Andre Garrett, minutes before the shooting. Wingate was standing outside of his home down the street from where Russell and Garrett were. When Garrett approached Wingate and demanded that he repay $30 that he owed Russell, an argument ensued after Wingate told Garrett that he did not have the money. Garrett then punched Wingate, knocking him unconscious. Garrett walked back to his house and told Russell what had occurred. Wingate testified that he then retrieved his rifle because he believed that Garrett had gone home to get a gun. According to Wingate, he waited by a fence in his yard to see if Wingate, if Garrett would return and challenge him again. About a minute later, Russell and Garrett came out of their house. Garrett began to walk towards Wingate. Wingate testified that he fired shots in the air as a warning to stop Garrett's advance. Garrett then stopped walking. Wingate testified that Garrett reached down in his pocket like he was getting a gun and started shooting at Garrett. Garrett then ran towards his house and took cover between two vehicles that were parked in his car, in his driveway. Wingate continued to shoot. Russell was hit as she was trying to get back into the house. The jury was instructed on a second-degree murder based upon a, based upon a serious provocation prong and an unreasonable belief prong. The jury found Wingate guilty of first-degree murder. In his post-conviction petition that is the subject of this appeal, Wingate alleged that he was actually innocent based upon newly discovered evidence. Attached to the petition was the affidavit of Jeff Mosley. In the affidavit, Mosley stated that he witnessed these, he was at the scene and witnessed these with a handgun. And then Garrett then went home and when he came out of the house, he had the gun, he had a gun in his hand and then pointed it towards Wingate and was walking towards Wingate as if to shoot him. The trial court granted the state's motion to dismiss, finding that Mosley's, Mosley's affidavit would not likely change the outcome of the trial. The trial court erred in because the petition and affidavit made a substantial showing that Wingate was actually innocent. At the second stage of the pleading, of the post-conviction proceedings, the court must take all well-pled facts as true and not engage in any fact-finding. To make a substantial showing of actual innocence based upon newly discovered evidence, the petitioner must show that the and that it would have likely changed the outcome of the trial. Wingate's petition and affidavit met this standard meriting an evidentiary hearing. First, the evidence was nearly discovered as there was no reason that Wingate knew Mosley was present at the scene until Mosley came forward years later. Mosley's affidavit states that he was reluctant to come forward at the time because he was close friends with both Garrett and Russell. Second, the evidence was material and not cumulative. Mosley's affidavit provides a disinterested, unbiased witness who would support Wingate's self-defense claim and or a finding of second-degree murder based upon an unreasonable belief. Mosley's affidavit indicated that Garrett was armed and pointing at the gun at Wingate when Wingate fired. This supports Wingate's testimony at trial that he believed Garrett was armed and was prepared to shoot him. Wingate was the defense's only witness. There was no other when Wingate fired shots at Garrett in self-defense. Clearly, the affidavit was not material, was not, was material and not cumulative. Third, Mosley's proper testimony would likely change the outcome of the trial. Considering Mosley's testimony, a jury may have believed Wingate's claim of second-degree murder based upon an unreasonable belief. The only basis for the trial court to find that Mosley's testimony would not change the outcome of the trial is if the court determined that Mosley's was not credible. However, an assessment of Mosley's credibility could not be on the petition or the affidavit. They must be taken as true at this stage. However, that is exactly what the trial court did here when it found in the second stage that Mosley's testimony would not likely change the outcome of the trial. Only after, only after assessing Mosley's credibility could the trial court determine whether that testimony would have changed the outcome of the trial. The trial court short-circuited the post-conviction proceedings by dismissing the petition before hearing Mosley's testimony. Could it be that what the trial court was saying here is even accepting Mosley's testimony as true, giving him credibility, there's so much other contradictory evidence to what he's saying that it would not have made a difference in the trial court's decision? Well, the trial court has really stated that he was dismissing the petition because he believed that Mosley's testimony would not change the outcome. Even if true? Even if true. Even if you give him all the credibility in the world, there's so much contradictory evidence already in the record. Is that... Your Honor, as far as... Could the trial judge have been saying that is what I'm asking. If he did, he was wrong without hearing Mosley's testimony and determining what evidence he would present at trial. It was not Mosley's affidavit that determined whether the outcome of the trial would be different. It was the testimony that he would provide. And an assessment of what testimony he could provide could not be determined until he testifies in an evidentiary hearing. You're saying he might say things that were not in the affidavit? Correct. Or even the questions, as you mentioned, Judge, even the questions of the... Let's call them the differences between the witness's testimony, defendant's testimony, and Mosley's affidavit. Those must be considered in evaluating Mosley's credibility and whether his testimony would change the outcome of the trial. They do not positively rebut what Mosley had stated in the affidavit. It is essential for the trial judge to not only evaluate Mosley's credibility, but hear the extent of his testimony, which perhaps the witnesses, if the judge would have heard Mosley's testimony, he would have considered some of the witness's testimony at the trial not credible. I mean, we just don't know. The court short-circuited the process. We do not know until there is an evidentiary hearing if Mosley's testimony would likely have changed the outcome of the trial. And that's the crux of this argument here, Your Honors, that the judge cut the process off too soon and determined that Mosley's testimony could not change the outcome of the trial without having heard Mosley's testimony. I ask Your Honors to reverse the trial court's order and remand the cause for an evidentiary hearing on Wingate's claim of actual innocence based upon Wingate's government evidence. Thank you. Thank you, Your Honor. Ms. Shanahan. May it please the Court. Excuse me. Go ahead. May it please the Court. My name is Sharon Shanahan, and I represent the people of the state of Illinois. I'd like to begin by addressing Justice Stewart's question about even accepting everything Mosley said as true, there was so much contradictory evidence that it wouldn't change the outcome. This goes precisely to the question which has to be decided in every claim of newly discovered or actual innocence, excuse me, is that it would not properly change the outcome on retrial. And that, I believe, is exactly what happened here. It is that I think the trial court did properly take the affidavit as true and say, even if he said all that, there is so much contradictory evidence that it is not. And we need to remember that it's probably changed, not could change, might change, but probably changed. Ms. Shanahan, is actual innocence, does that include a lesser included offense? In other words, there is a lot of controversy on the facts of this case. One said this, one said that, there's so many people. I would disagree with that, but go ahead with your question. Well, okay. Let me ask this then. Mr. O'Neill said that it may have been that the jury would have concluded that a lesser included offense would have been warranted. Is that the same as actual innocence? I would say, first of all, I would say no, it is not. Because actual innocence is exactly what the words say. It does not mean that it would weaken the state's case. It means that he did not commit the crime. Second of all, as we argue in our opening brief, even if you take the defendant's claim for this lesser included offense, the most it could be is mutual combat. Mutual combat would not result. You can't get an instruction on self-defense under mutual combat. So even if, because that's the very best interpretation that you can make of these is that you have fist fight and then you have gun fight. So the defense's argument about unreasonable belief you don't think could have ever entered into the realm of a lesser included. This man went and got, not a rifle, an AK-47, you know, before the defendant even came back out of his house. He had his AK-47. He was not on his own property. He was on the property next door to him. Okay. That's not what Justice Cates asked you, though, okay? Let's stay away from the facts. I think what she's asking you is, and this is kind of an interesting question. A conviction of second degree is an acquittal of first degree, right? Yes. So does the concept of a post-conviction petition alleging actual innocence extend to a situation where evidence comes up where, let's just assume it could be said that probably he would have been convicted of second degree instead of first degree? Does it extend to that? I mean, is that an actual innocence claim? I'm innocent of first because I'm guilty of second. That's what we're talking about. Yes, I understand your question. And I guess, but I go back to that even accepting Mr. Mosley's affidavit as true. Kate, I'm not talking about the facts of this case. I want to know on the law, is that an actual innocence claim? Is that a viable actual innocence claim? I don't know. I'm asking you. I want to hear what you have to say about it. I would ask if I could have the opportunity to brief that particular question. It's certainly not addressed by either party. I mean, I just don't remember ever having this come up before. I mean, usually when we've had actual, it's your innocent alibi. And I guess my thinking in this, in briefing this, is that. It's self-defense. It's what you were, you know. Well, yes, and the fact that this can't be self-defense, that this could at most be mutual combat and therefore couldn't support a defense of self-defense. So. I asked because it seems to me that if an affidavit raises a question that could somehow allow the judge to instruct on a lesser included, then it either has to be or can't be the equivalent of actual innocence. And it just doesn't seem correct to me that a lesser included wouldn't be equivalent to actual innocence. I'm sure counsel, my opponent, can clarify this. Well, I won't put that on the side. Because I know I didn't write this brief. You might not like this clarification. It kind of jumped in. I think the jury was instructed. Right. So how the affidavit can change that, I don't know. And I also don't see how. Oh, I see what you're saying. I mean, the jury was instructed on second degree in this case is my understanding. Correct. Yes. But the claim, and maybe I misunderstood Mr. O'Neill because I didn't really get this from reading the briefs either. I was focused on self-defense, but it did occur to me during Mr. O'Neill's argument that he's saying, you know, he's not guilty of first because he's guilty of second. So I'm thinking, okay, is that an actual innocence claim? Again, I guess my response is I'm not sure. As we both talked about it today, I've told you what I think generally as the law and specifically as a practice case, and I would be more than happy to brief that issue if the court would like me to. Okay. I wouldn't mind a one- or two-page letter on, or a short brief, subsequent brief on that issue. Okay. Would you care to get in on that, Mr. O'Neill? So let's just say that each of you have 14 days to supplement the record. Appropriate. Appellate. Going first? Again, I'd care to just let you know. Mutual filing time. I don't know. 14 days is fine with me. Would you, Ms. Shanahan, would you like to see his first? Is that what you said? Well, yes, that's what I said. Okay. How about Mr. O'Neill, 14, and you, 21? Great. Okay. Sounds good. Sounds good. Okay. So let's go back to where we intended to start out on this case. A point that I have to take issue with in the defendant's brief and in oral argument today, the defendant says at second stage of proceedings all well-pleaded facts should be taken as true. That leaves out a really, really, really big section of the law, which is all well-pleaded facts that are not positively rebutted by the trial record. And that's what makes Mr. Mosley's affidavit to carry little or no weight, is that virtually everything he says not only conflicts with the State's primary witness, Mr. Garrett, but conflicts with Mr. Mosley's own testimony at trial, virtually everything. He says he and Mr. Garrett are standing across the street. The defendant says Mr. Garrett's driving down a road a block and a half away. He says Mr. Garrett had a gun when he hit the defendant. The defendant said he just punched it. You would think if someone punched you in the face you'd know whether they had a gun in their hand. He says that Mr. Garrett had his gun out of his hand when he walked out of his house. The defendant says he did not see a gun in Mr. Garrett's hand, despite the fact that Mr. Garrett's walking straight at him. He says Mr. Garrett, after the defendant fired warning shots, and you'd think warning shots from an AK-47 would warn you pretty good, that Mr. Garrett raised his gun and pointed it in the direction of the defendant. The defendant says that Mr. Garrett just reached towards his pants pocket, that he did not see a gun but only thought that Mr. Garrett was pointing it. Now this is Mr. Garrett walking straight at the defendant. At the very best, Mr. Mosley is 25 feet away hiding under a car at this point in time. He says that Mr. Garrett has a gun in his hand and has been pointing it at the defendant. The defendant says, and I quote, page of the record 371, I never did see a gun in Andre Garrett's hand. So everything he says is refuted by the record. Now the defendant says that, well, it's not rebutted by the record because we have to see what he meant by that. Well, I'm sorry, if someone says, if the record says in a traffic case the light was red, if the defendant says the light was red and the plaintiff says the light was red, then if somebody comes along later on and says the light is green, that's rebutted by the record. You don't need to bring in the defiant to say, well, what is your definition of green and why did you think it was green? It's rebutted by the record. This is rebutted by the record, and the state would stand on its other arguments. Thank you very much. Mr. O'Neill. Mr. Honors, of course I would address that question that was posed by your honors about the unreasonable belief, whether that would be considered actual innocence. All I can say at this point is that the standard for determining whether there's a substantial showing of actual innocence based on newly discovered evidence, the third prong is whether that new evidence would change the outcome of the trial. Now, I interpret that to mean, again, about doing the research on this matter, that changing the conviction from first-degree murder to second-degree murder would be changing the outcome of the trial. It makes a big difference for the defendant. Correct. Again, it's changing the outcome of the trial. In the brief, the focus was on changing the outcome of the trial as it would be equated with self-defense. However, it is also mentioned that changing the outcome of the trial could be found guilty of second-degree murder, and that makes sense to me, again, about researching the matter. That's my position here at this point. Your Honor, Counselor's reference to a mutual combat, this would be a mutual combat issue, will only say that if the jury believed Mosley's testimony, then the jury could find that Garrett was the aggressor as he was advancing on Mr. Wingate with the gun pointed. So mutual combat, I don't think that really applies here. But to the bigger point of the state's claim that the claims in Mosley's affidavit are rebutted by the record, I submit to Your Honors that this evidence does not positively rebut the affidavit. They only go towards factors to be considered in evaluating Mosley's testimony. For example, Counselor mentions the fact that one witness did not see Garrett with a gun. Well, that does not positively rebut Mosley's claim in his affidavit that he saw Garrett with a gun. And all of the evidence can be considered that way, too. It's evidence that simply was presented at trial, but that is not a positive affirmative rebutting of Mosley's claim. After a judge heard Mosley testify, maybe the judge would consider that the witness who said they didn't see Garrett with the gun was not credible. I mean, we just don't know. The record is just incomplete because the circuit court short-circuited the process by not allowing the matter to proceed to an evidentiary hearing to hear Mosley's testimony. We could flesh this stuff out and the judge could evaluate his credibility. I ask Your Honors to reverse the trial court and amend it for an evidentiary hearing. Thank you. Thank you. Okay, the court will take this matter under advisement and issue a disposition in due course.